IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GREGORY ALLEN LAMPLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 2:13-cv-00850-WC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff, Gregory Allen Lampley, applied for disability insurance benefits and supplemental security income benefits. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which the ALJ found Plaintiff not disabled at any time through the date of the decision. Plaintiff appealed that decision to the Appeals Council, which rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 9). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

>answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  The RFC may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job

---

[3] *McDaniel*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income (SSI) case.  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

3

experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.     ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-one years old at the time of the decision, and completed high school. Tr. 29, 52.  Following the administrative hearing and employing the five-step process, the ALJ found at Step 1 that Plaintiff "has not engaged in substantial gainful activity since May 21, 2010, the alleged onset date."  Tr. 23.  At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "right toe wound with osteomyelitis, resolved; diabetes mellitus, non-insulin dependent; benign essential hypertension; obesity with back pain; and mild contractures of the hands."  *Id.*  The ALJ then found at Step 3 that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."  Tr. 24.  Next, the ALJ found that Plaintiff has the RFC to perform light work with certain limitations.  Tr. 24.

Following the RFC determination, the ALJ found at Step 4 that Plaintiff could not perform any of his past relevant work.  Tr. 29.  At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and based upon the testimony of the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 29.  The ALJ identified the following occupations as examples: "electronics worker," "winding machine operator," and "counter clerk."  Tr. 30.  Accordingly, the ALJ determined that

Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 21, 2010, through the date of th[e] decision." *Id.*

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision: (1) whether "[t]he Commissioner's decision should be reversed because the ALJ erred in failing to consider Mr. Lampley's severe impairment of mild heart failure on his ability to work"; and (2) whether "[t]he Commissioner's decision should be reversed because the ALJ erroneously relied on Mr. Lampley's application for unemployment benefits to support discrediting his allegations and denying his claim." Pl.'s Br. (Doc. 12) at 3.

## V. DISCUSSION

### A. *Whether the ALJ erroneously failed to consider Plaintiff's alleged impairment of mild heart failure*

Plaintiff argues that the ALJ's decision "fails to discuss, or even mention Mr. Lampley's congestive heart failure." Pl.'s Br. (Doc. 12) at 4. Plaintiff asserts that Dr. Robert Boyington, at Covington Family Care P.C., noted that Plaintiff suffered from mild heart failure on August 24, 2009, and on June 7, 2010, an x-ray showed "mild vascular congestion to be present." *Id.* Plaintiff also contends that testimony given before the ALJ of swelling in his legs supports symptoms of congestive heart failure. *Id.* Plaintiff further argues that if his testimony is taken as true, based on having to prop his legs up

for eight to ten hours a day, Plaintiff "would be unable to maintain employment" and would be unable to perform light work as the VE testified. *Id.* at 4-5.

Defendant argues that Plaintiff's argument lacks merit because "Plaintiff never identified 'mild congestive heart failure' as one of [Plaintiff's severe] impairments." Def.'s Br. (Doc. 13) at 4-5.  Additionally, Defendant claims that Plaintiff mischaracterized Dr. Boyington's August 24, 2009, note, and that subsequent treatment notes "do not include any reference to congestive heart failure." *Id.* at 6.  Finally, Defendant argues that Plaintiff was diagnosed with hypertension, which is a symptom of congestive heart failure, and that, while Plaintiff now tries to allege that his leg swelling is a symptom of heart failure, "[he] declined to make that connection when asked about the cause of his leg swelling by the ALJ." *Id.* at 6.

Plaintiff's argument that the ALJ erred in failing to consider his mild congestive heart failure is without merit.  First, Plaintiff never alleged any form of heart issue, other than hypertension, on his disability application.  Tr. 25.  Instead, in addition to hypertension, Plaintiff alleged disability based on diabetes and poor circulation.  *Id.* Additionally, when the ALJ asked at the hearing whether there were any additional impairments for the ALJ to consider, Plaintiff's counsel answered no.  Tr. 44.  An ALJ is "under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir.

1996). Plaintiff cannot now raise the issue of mild congestive heart failure as a severe impairment when he previously failed to do so despite multiple opportunities to disclose it to the ALJ. This is particularly salient where the claimant is represented by counsel. *Id.* "The ALJ is not subject to a heightened duty to discover all of the facts relevant to a claimant's disability claim." *Id.*

Moreover, as Defendant asserts, it appears Dr. Boyington's note mentioning Plaintiff's "mild" heart failure was based upon Plaintiff's own report to Dr. Boyington. *See* Tr. 241. Indeed, Dr. Boyington's cardiovascular examination of Plaintiff at that 2009 appointment was normal. Tr. 242. In addition, the court finds it notable that, as indicated by the ALJ's summary of the medical evidence, *see* Tr. 25-29, doctors examining Plaintiff in the years following Dr. Boyington's 2009 examination failed to identify mild congestive heart failure as a medical condition suffered by Plaintiff. Nor does Plaintiff point to any evidence in the record establishing a subsequent physician opinion or diagnosis of congestive heart failure in support of his claim that the ALJ failed to recognize this as a severe impairment. Finally, it appears Plaintiff is merely speculating as to the cause of his need to prop his legs up eight to ten hours a day, as there is no substantial medical evidence in the record indicating that he must prop his legs up or what medical condition necessitates him doing so.

Thus, the court concludes that the ALJ did not err in failing to mention Plaintiff's purported mild congestive heart failure because Plaintiff never raised it as an impairment

8

on his application or at the hearing, and the medical records do not indicate that any physician has found mild congestive heart failure to significantly limit Plaintiff's ability to work.

### B. Whether the ALJ erroneously relied on Plaintiff's application for unemployment benefits to support discrediting Plaintiff's credibility

Plaintiff argues that the "the ALJ committed error by relying on Mr. Lampley's receipt of unemployment compensation benefits, and his inability to remember the exact date he stopped working, in determining Mr. Lampley was not credible." Pl.'s Br. (Doc. 12) at 8.  In essence, Plaintiff asserts that the ALJ weighed his receipt of unemployment benefits too greatly and instead should have considered other factors. *Id*. at 10-12. Additionally, Plaintiff argues that the ALJ's findings regarding Plaintiff's credibility are flawed because Plaintiff testified about different alleged onset dates. *Id*. at 12. Plaintiff asserts that the ALJ's argument "overlooks the possibility that someone can stop working at their job due to health issues, yet still remain able to work other jobs on a regular and continuous basis." *Id.*

Defendant asserts that the ALJ considered "several good reasons, each supported by substantial evidence, for finding that Plaintiff's claims were not reliable."  Def.'s Br. (Doc. 13) at 6.  Defendant contends that the ALJ considered the unemployment compensation, Plaintiff's misstated date he stopped working, and Plaintiff's own exaggerated claims, and ultimately found that Plaintiff's allegations were inconsistent with medical records and evidence. *Id.* at 7.

9

Plaintiff's argument fails as it is clear from the record that the ALJ considered multiple factors in deciding Plaintiff's credibility, not just Plaintiff's receipt of unemployment benefits. In addition to Plaintiff's receipt of unemployment benefits, the ALJ considered Plaintiff's daily living activities, apparent inconsistent statements about the alleged onset date, medical evidence, statements made by Plaintiff himself concerning the effects of his alleged symptoms, and other testimony presented at the hearing. Tr. 27-29.

In general, the court may consider receipt of unemployment benefits as a factor when determining a Plaintiff's credibility. *See Turner v. Colvin*, 5:12-CV-2648-LSC, 2013 WL 5574920 (N.D. Ala. Oct. 10, 2013); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). Nevertheless, Plaintiff cites *George v. Astrue,* 2012 WL 3030157, *4-5 (N.D. Ala. July 20, 2012), in support of his argument that the ALJ improperly relied upon his receipt of unemployment benefits in determining credibility. *See* Pl.'s Br. (Doc 12) at 10-11. In *George*, the District Court upheld the ALJ's weighing of the Plaintiff's application for unemployment benefits in its credibility determination. 2012 WL 3030157, *1-*5. Plaintiff attempts to distinguish *George* by arguing that, whereas in this case the ALJ only utilized receipt of unemployment benefits to determine Plaintiff's credibility and Plaintiff was not given an opportunity to explain his application for or receipt of unemployment benefits, in *George* multiple factors were considered to determine the plaintiff's credibility and the plaintiff was afforded an

10

opportunity to explain the inherent inconsistency between his claim of disability and his representation to the State agency that he was capable of working in order to receive unemployment benefits. Pl.'s Br. (Doc. 12) at 10-11. However, the court has determined that this argument is incorrect, as the ALJ clearly considered multiple factors in assessing Plaintiff's credibility, and, as to whether the ALJ should have afforded him an opportunity to explain, *George* states as follows:

> While this court is not convinced, as the ALJ suggested, that a claimant is obligated to explain the inconsistency in the same manner that the *Cleveland* decision requires an ADA plaintiff to explain inconsistencies, the court also sees no reason why the ALJ could not consider any explanation, or lack thereof, in making a credibility determination.

2012 WL 3030157, at *3. Thus, whether or not Plaintiff provided an explanation simply does not preclude the ALJ from relying on his receipt of unemployment benefits, along with other factors, in assessing his credibility.

For all of the foregoing reasons, the court concludes that Plaintiff's claim is without merit, as it is clear from the record the ALJ relied upon multiple factors in determining claimant's credibility, and, furthermore, the ALJ was permitted to consider receipt of unemployment compensation and Plaintiff's inconsistent statements as factors in that determination.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 23rd day of October, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE